Filed 11/17/23  P. v. Jackson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM MARK JACKSON,<br><br>    Defendant and Appellant. | B325260<br><br>(Los Angeles County<br>Super. Ct. No. YA049759) |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

The Emig Law Group and Maya Helena Emig for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant William Mark Jackson appeals the trial court's summary denial of his petition for resentencing pursuant to Penal Code[1] section 1172.6 (former § 1170.95[2]). Jackson contends the court erred because the record of conviction does not conclusively rebut his contention that his attempted murder conviction was based on the natural and probable consequences doctrine. We conclude the jury instructions at Jackson's trial categorically establish that Jackson's conviction was not based on the natural and probable consequences doctrine. Because Jackson was ineligible for relief as a matter of law, we affirm the court's denial of the petition.

## BACKGROUND

### A. Factual Background

Remaining cognizant of section 1172.6, subdivision (d)(3)'s restrictions on the use of prior appellate opinions, we follow the lead of both parties' briefing and quote our prior opinion to provide context to our discussion of the record of conviction. "On October 4, 2001, Danny Trahan was driving his car on 104th Street in Lennox when two cars and a van drove up and blocked his path while Jackson and Kareem Shaw (both members of the 105 Underground Crips) confronted Trahan. Shaw, standing behind Trahan, pointed a gun at his head while Jackson, standing in front of Trahan, asked, 'What's up now' (which Trahan understood to mean Jackson had a 'problem' with him).

---

[1] All unspecified statutory references are to the Penal Code.

[2] The Legislature renumbered the statute as section 1172.6, with no change in text, effective June 30, 2022 (Stats. 2022, ch. 58, § 10). For ease of reference, we use the current citation at section 1172.6 throughout this opinion.

Trahan pushed the gun away from his head, fought with Jackson and Shaw, then broke free and ran down the street. As Trahan ran, Jackson shouted 'Catch him,' then 'shoot him,' and Trahan heard two or three gunshots.

"As Trahan ran, one of the assailants' cars (driven by a woman) pulled in front of him and blocked his path. The driver popped open the trunk, got out of the car, and started wrestling with Trahan. Jackson, Shaw, another man, and another woman ran up and tried to force Trahan into the trunk. The driver said, 'Shoot him,' put a gun to Trahan's head, and pulled the trigger— but the gun did not fire. Someone else hit Trahan on the head with another gun, and one of the men hit him in the ribs and stomach with a crowbar.

"The struggle continued until Jackson said, 'Let's go. That's enough,' at which point the assailants stopped their attack and ran off. By the time Trahan oriented himself, his car was gone but the assailants' van (later determined to be stolen) was still parked where Trahan had first been attacked. At the scene, Trahan identified Jackson (they grew up together) as one of his attackers. Two .22-caliber bullets (one live, one expended) were found at the scene.

"Two days later, Trahan identified Jackson and Shaw from separate photographic arrays. When the police thereafter entered Jackson's 106th Street apartment to execute a search warrant, Jackson jumped from a second-story window and ran toward 104th or 105th Street. Seconds later, an officer at the intersection of 106th Street and Normandie Avenue took Jackson into custody." (*People v. Jackson* (May 20, 2003, B161704) [nonpub. opn.].)

Jackson was charged with attempted premeditated murder (§§ 187, 664; count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), and carjacking (§ 215, subd. (a); count 3), along with allegations that a principal was armed with a firearm in the commission of the attempted murder, and that the crimes were committed for the benefit of a street gang. In 2002, a jury convicted Jackson of the attempted murder and assault with a firearm counts; it acquitted Jackson of carjacking. The jury found that the attempted murder was willful, premeditated, and deliberate; that a principal was armed with a firearm (§ 12022, subd. (a)(l)); that a principal used a firearm (§ 12022.53, subd. (b); and that the crime was committed for the benefit of, at the direction of, and to assist in criminal conduct by a street gang (§ 186.22, subd. (b)(l)). The jury also found a gang allegation true as to the assault with a firearm count.

The court sentenced Jackson to 34 years plus life in prison. We affirmed the judgment on May 20, 2003. (*People v. Jackson*, *supra*, B161704.)

**B.    Background on Section 1172.6**

Section 1172.6 was enacted by the Legislature in 2018 as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.). The legislation's overall purpose was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this, the bill added section 189, subdivision (e) "to amend the felony-murder rule," and added section 188, subdivision (a)(3) "to amend the

4

natural and probable consequences doctrine." (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

Senate Bill No. 775 (2021-2022 Reg. Sess.) later expanded section 1172.6 to allow persons convicted of attempted murder under the natural and probable consequences doctrine to apply for resentencing. (Stats. 2021, ch. 551, § 2.) "[*A*]*ttempted* murder requires a specific intent to kill." (*People v. Mumin* (2023) 15 Cal.5th 176, 190.) Formerly, such malice could be implied in an attempted murder prosecution " ' "when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." ' [Citation.] [¶] . . . The natural and probable consequences doctrine provides that ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime." ' [Citation.]" (*People v. Offley* (2020) 48 Cal.App.5th 588, 595.) Now, however, because of Senate Bill No. 775, implying malice via the natural and probable consequences doctrine can no longer support an attempted murder conviction.

## C.    Jackson's Section 1172.6 Petitions

In 2019, Jackson petitioned for resentencing under section 1172.6. On September 13, 2019, the trial court issued a written order denying the resentencing petition without appointing

5

counsel.[3]  The court found the version of section 1172.6 then in effect did not extend to attempted murder convictions, and even if it did, Jackson was ineligible for relief because he directly perpetrated the attempt to kill Trahan, and either shot Trahan or aided and abetted a codefendant who did.  Jackson did not appeal the summary denial of his petition.

On May 26, 2022, after the Legislature amended section 1172.6 to extend resentencing eligibility to those convicted of attempted murder, Jackson (through retained counsel) petitioned again for resentencing under section 1172.6.  On June 1, 2022, the trial court denied the petition, stating, "This same issue was raised and denied by the court" previously, and "If this is a request for reconsideration it is untimely and denied."[4]  Through his counsel, Jackson then filed a motion for reconsideration, pointing out that his May 26, 2022 petition was based on subsequent amendments to section 1172.6 expanding it to include attempted murder and was not a request for reconsideration.  The trial court summarily denied the motion for reconsideration.

---

[3] On our own motion, we augment the record to include the September 13, 2019 order, Jackson's subsequent section 1172.6 petition filed May 26, 2022, and the court's June 1, 2022 order regarding the May 26, 2022 petition, all of which the parties address in their briefing.  (Cal. Rules of Court, rules 8.155(a)(1), 8.340(c).)

[4] The June 1, 2022 minute order erroneously states that Jackson was not represented by counsel; as noted above, he retained private counsel who filed the May 26, 2022 resentencing request.

# DISCUSSION

"'We independently review a trial court's determination on whether a petitioner has made a prima facie showing.' [Citation.]" *People v. Lee* (2023) 95 Cal.App.5th 1164, 1174.) Because we conduct an independent review, "we decline to address the trial court's reasons for denying the petition, as we may affirm a ruling that is correct in law on any ground. [Citation.]" (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204, fn. omitted.)

We start with the record of conviction. "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner"'" in determining whether the petitioner has made a prima facie showing. (*Ibid.*) "For example, if the record shows that the jury was not instructed on . . . the natural and probable consequences . . . doctrine[ ], then the petitioner is ineligible for relief as a matter of law. [Citation.]" (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

Jackson argues he satisfied his prima facie burden because the prosecutor referenced the natural and probable consequences doctrine in her closing argument. Specifically, the prosecutor stated the following when discussing aiding and abetting: "One who aids and abets is not only guilty to the particular crime which that person aided and abetted, but is also guilty of any crimes committed by a principal which are the natural and

7

probable consequences of the crimes originally aided and abetted."

The Attorney General acknowledges the prosecutor made this stray reference during her closing, but argues Jackson failed to make a prima facie showing because the record of conviction shows the court did not give any natural and probable consequences jury instructions. Instead, the instructions given required the jury to find Jackson acted with the specific intent to kill—either as the actual shooter or as an aider and abettor—in order to convict Jackson of attempted murder. Therefore, the Attorney General argues, as a matter of law the jury could not have convicted Jackson based on the natural and probable consequences doctrine because it was never instructed on that theory.

Our colleagues in Division Five recently considered a similar argument. (*People v. Cortes*, *supra*, 75 Cal.App.5th 198.) In *Cortes*, the court instructed the jury "that it could find [the defendant] guilty of murder [and attempted murder] as a direct perpetrator or as a direct aider and abettor," and did not instruct on "the natural and probable consequences doctrine." (*Id*. at p. 200.) During closing argument, the prosecution made the following comment: " 'An aider and abettor is considered to be a principal. *One who aids and abets is not only guilty of that particular crime in which that person aided and abetted but is also guilty of any crimes committed by a principal which are the natural and probable consequences of the crimes originally aided and abetted.* That is principals. Talks [*sic*] about this aiding and abetting.' " (*Id*. at pp. 200-201.) The defendant in *Cortes* contended that he made a prima facie case of entitlement for resentencing because "although the jury was not instructed on

8

the natural and probable consequences theory of murder, it may have convicted him under that theory because the prosecutor mentioned the natural and probable consequences doctrine in closing argument." (*Id.* at p. 203.)

The *Cortes* court rejected this argument. It noted that "we presume a jury understands and follows the court's instructions, and ' "treat[s] the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate . . . ." [Citation.]' [Citation.]" (*People v. Cortes*, *supra*, 75 Cal.App.5th at p. 205.) In *Cortes*, the court "instructed the jurors that they could find [the defendant] guilty of murder and attempted murder under only two theories: that he was a direct perpetrator or that he was a direct aider and abettor of the crimes. The prosecutor made a single comment on a legal theory in closing that was not presented in the case. Nothing in the charges, the instructions, or the balance of the trial permitted the jury to find [the defendant] guilty on a theory other than direct aiding and abetting or liability as a perpetrator of murder and attempted murder. There is no indication in the record to suggest that the jury did not, in fact, follow the court's instructions." (*Id.* at pp. 205-206.) Because the record of conviction demonstrated that the defendant in *Cortes* was not convicted based on the natural and probable consequences doctrine, he failed to make a prima facie showing of entitlement to relief under section 1172.6. (*Id.* at p. 206.)[5]

---

[5] *Cortes* also relied on the fact that the prosecution in that case "did not argue at any point during trial, including closing argument, that a crime other than murder or attempted murder was committed, and no other crime was charged or at issue

9

We likewise presume the jury in Jackson's trial understood and followed the court's instructions. Those instructions required the jury to find Jackson acted with the specific intent to kill in order to convict him of attempted murder, whether as the actual shooter or as an aider and abettor. The prosecutor made an isolated comment in closing about a legal theory that was not presented; the court instructed the jury that it was to "accept and follow the law as [the court] state[d] it," and that "[i]f anything concerning the law said by the attorneys in their arguments . . . conflicts with my instructions on the law, you must follow my instructions." Nothing in the record of conviction indicates the jury did not follow the court's instructions when convicting Jackson.

Because the record of conviction demonstrates that the jury's verdict was not based on the natural and probable consequences doctrine, Jackson failed to meet his burden of making a prima facie showing of entitlement to relief under section 1172.6. There was thus no error in denying Jackson's resentencing petition at the prima facie stage. (*People v. Cortes*, *supra*, 75 Cal.App.5th at pp. 204-206; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677-678 [jury instructions showed § 1172.6 petitioner ineligible for relief as a matter of law because jury was not instructed on any now-invalid malice theory].)

---

throughout the trial." (*People v. Cortes*, *supra*, 75 Cal.App.5th at p. 205.) Although Jackson was additionally charged with carjacking (for which he was acquitted) and assault with a firearm (for which he was convicted), we find the lack of any jury instruction dispositive.

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.

BENDIX, Acting P. J.

11